## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

KATHY R. ELLIS,                )
                               )
         Plaintiff,            )
                               )
v.                             )    Case No. CIV-05-362-FHS
                               )
JO ANNE B. BARNHART,           )
Commissioner of Social         )
Security Administration,       )
                               )
         Defendant.            )

**FINDINGS AND RECOMMENDATIONS**

Plaintiff Kathy R. Ellis (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on September 12, 1966 and was 38 years old at the time of the hearing before the ALJ. She completed her education through the tenth grade. Claimant has worked in the past as a receptionist, a sales clerk, a waitress, a stock clerk and a nurse's aid. Claimant alleges an inability to work beginning March 1, 2002, due to blindness in her left eye, fibromyalgia, degenerative disk disease of the lumbar spine causing hip and back pain, shoulder pain post surgery, carpal tunnel syndrome, hypertension, anxiety, and insomnia.

**Procedural History**

On February 28, 2003, Claimant protectively filed for disability benefits under Title II of the Social Security Act (42 U.S.C. § 401, *et seq.*) and Supplemental Security Income under Title XVI of the Social Security Act. Claimant's application for benefits was denied initially and upon reconsideration. A hearing before ALJ, Lance K. Hiltbrand was held on November 5, 2004 in Ardmore, Oklahoma. By decision dated January 15, 2005, the ALJ found that Claimant was not disabled at any time through the date of the decision. On July 19, 2005, the Appeals Council denied review of the ALJ's findings. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant's medical conditions were severe, they did not meet a Listing and she retained the residual functional capacity ("RFC") to perform light to medium work, including her past relevant work.

**Review**

Claimant asserts the ALJ committed error requiring reversal in failing to (1) give appropriate weight to Claimant's treating physician's opinion; (2) support his findings as to Claimant's RFC with substantial evidence; and (3) engage in a legally sufficient

credibility analysis.

## Treating Physician's Opinion

Claimant asserts the ALJ failed to attribute the appropriate weight to the opinion of Dr. Robert McArthur, one of Claimant's treating physicians. The ALJ specifically considered the Medical Assessment of Ability to Do Work Related Activities (Physical) form completed by Dr. McArthur on October 18, 2004. The ALJ concluded the opinion reflected in the Medical Assessment was "invalid" as being "not consistent with the evidence of record and testimony at the hearing." The ALJ also states the Medical Assessment is a "non-standard form," unsupported by "treating notes to support limitations (sic) noted on this form." (Tr. 22). The ALJ further found that the issue of a claimant's RFC "is an administrative issue reserved to the Commissioner and are (sic) never entitled to controlling weight or special significance." (Tr. 23). As a result, the ALJ appears to have given no weight to Dr. McArthur's opinion in reaching his decision.

Dr. McArthur is undoubtedly a "treating physician" for Claimant. Claimant was attended by Dr. McArthur beginning on September 16, 2003 when she went to the McBride Clinic reporting pain in her ribs, hips and shoulders, muscle soreness, fibromyalgia, insomnia, irritability, nervousness, a rash, mouth dryness, eye dryness, shortness of breath and recent weight gain. Dr. McArthur diagnosed her with arthralgias, myalgias and insomnia.

5

(Tr. 249). Claimant again saw Dr. McArthur on October 6, 2003 complaining of pain in her ankles, shoulders and wrists, resulting in a continuing diagnosis of fibromyalgia. (Tr. 247).

Dr. McArthur also attended Claimant on November 5, 2003 with pain in her hip and lower back radiating to her right leg with numbness and tingling in her right foot over the past three weeks. Dr. McArthur stated Claimant suffered from degenerative arthritis in her lumbar spine with radiculopathy on the right. (Tr. 246). X-rays performed at Dr. McArthur's request revealed degenerative arthritis in three levels of the lumbar spine and neural formaminal narrowing at L5-S1. (Tr. 252). Additionally, an MRI ordered by Dr. McArthur showed a mild disk bulge at the L4-5 causing mild right formaminal stenosis and minimal impingement of the right L4 nerve root. (Tr. 253). As a result, in December of 2003, Claimant underwent steroid injections in her lumbar spine. (Tr. 265-68).

In January of 2004, Claimant again saw Dr. McArthur complaining of pain in her right wrist and shoulders as well as occasional numbness in her right leg with prolonged sitting. Dr. McArthur diagnosed Claimant with lumbar degenerative arthritis and fibromyalgia. (Tr. 245).

On May 5, 2004, Claimant saw Dr. McArthur reporting pain in her lower back, persistent numbness in her right leg and deceased function in her right arm due to pain and/or numbness in her forearm and wrist. Dr. McArthur diagnosed Claimant with

6

degenerative lumbar arthritis with neural foraminal narrowing, right carpal tunnel syndrome and fibromyalgia. (Tr. 244).

In July of 2004, Claimant reported to Dr. McArthur, claiming she was experiencing nervousness, increased pain with activity, and constant lower back pain making it uncomfortable to wear undergarments. (Tr. 243).

On October 18, 2004, Dr. McArthur completed the Medical Assessment form. He assessed Claimant as being capable of sitting two hours in an eight hour day, standing and walking "less than 1" hour per day, and capable of lifting only under 10 lbs. Dr. McArthur stated on the form that Claimant could engage in simple grasping and fine manipulation with both hands but could not push and pull with her arms. Claimant was also restricted on pushing with both feet. (Tr. 264).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ appears to have given no weight to Dr. McArthur's opinion, instead complaining about the form completed by the treating physician and stating other evidence in the record does not support the Medical Assessment conclusions. However, evidence from the record generally supports the problems of which Claimant complained when attended by Dr. McArthur as well as the restrictions contained on the Medical Assessment form. Visits to other medical facilities and physicians reflect the same complaints, level of pain and restricted mobility. (Tr. 169-70, 182, 183-89, 194-200, 209, 211, 214, 215-20). The wholesale rejection of Dr. McArthur's opinion without engaging in the analysis required by the Social Security regulations and controlling precedent is unacceptable. The ALJ must progress through the "controlling weight/deferential weight" analysis and explain with a certain degree of specificity as to the reasons for rejecting the proffered opinion. The ALJ failed to do so in this case, requiring reversal.

**Return to Past Relevant Work**

Claimant next contends the ALJ failed to properly assess her limitations in concluding she could return to her past relevant work. Since the ALJ's conclusions as to Claimant's RFC were formed without any consideration of Dr. McArthur's opinions, the decision must be reversed. The ALJ set forth Claimant's capabilities which were markedly less restrictive than those opined by Dr. McArthur,

Claimant's treating physician. (Tr. 22-23). On remand, the ALJ shall reconsider his conclusions regarding Claimant's RFC after engaging in the required analysis of Dr. McArthur's assessments.

## Claimant's Credibility

As a final issue, Claimant contends the ALJ erred in his credibility findings. The ALJ concluded Claimant "has exaggerated her signs and symptoms." (Tr. 21). Other than noting Claimant can perform some daily and personal activities, the ALJ fails to link his negative credibility determination with the evidence developed at the hearing.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

In this case, the ALJ's discussion of Claimant's credibility lacks a stated factual foundation. As a result, on remand, the ALJ shall draw the affirmative link between his credibility conclusions and evidence in the record which is required by the prevailing case authority.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not

applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given ten (10) days from the date of the service of these Findings and Recommendations to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Findings and Recommendations within ten (10) days will preclude appellate review of the judgment of the District Court based on such findings.

DATED this 22nd day of August, 2006.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE